Andrew M. Wagley, WSBA #50007
Etter, McMahon, Lamberson,
Van Wert & Oreskovich, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA  99201
(509) 747-9100
(509) 623-1439 Fax
Email: awagley@ettermcmahon.com
*Attorney for Defendant William O. Mize*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                           Plaintiff,<br><br>v.<br><br>WILLIAM O. MIZE,<br><br>                           Defendant. | Case Nos.   2:18-CR-232-TOR-1<br>                       2:19-CR-0021-TOR<br>                       2:20-CR-0144-TOR<br>                       2:20-CR-0145-TOR<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

COMES NOW, Defendant William O. Mize, by and through his counsel of record, Andrew M. Wagley of Etter, McMahon, Lamberson, Van Wert & Oreskovich, P.C., and hereby submits the following Sentencing Memorandum. For the reasons indicated herein, Mr. Mize respectfully requests the Court follow the joint recommendation of 144 months contained within the parties' heavily negotiated Rule 11(c)(1)(C) Plea Agreement.  This substantial prison

Defendant's Sentencing
Memorandum—Page 1

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

sentence is sufficient based upon the individual characteristics of Mr. Mize, including his age and health.

## BACKGROUND

Before the Court for sentencing is a 63-year-old man who committed various white collar offenses in connection with an insurance fraud scheme. On August 7, 2024, Mr. Mize pled guilty to Conspiracy to Commit Mail Fraud and Wire Fraud (18 U.S.C. §§ 1341, 1343, and 1349); Making and Subscribing to False Income Tax Returns (26 U.S.C. § 7206(1)); and Failure to Appear (18 U.S.C. §§ 3146(a)(1), (b)(1)(A)(i)). (*See* ECF No. 1046 at 1-2.)

As part of the crime, Mr. Mize and Co-Defendants devised a scheme "to enrich themselves by defrauding victim insurance companies through filing and collecting payment on fraudulent insurance claims for property damages, wage loss, and bodily injury." (ECF No. 1046 at 9.) "Prior to a staged accident, [Mr. Mize] and Co-Defendants purposely inflicted injuries on a co-conspirator or themselves to mislead responders and insurance companies into believing the co-conspirator was injured in the accident and to increase insurance payouts." (*Id*. at 10.) Mr. Mize and the Co-Defendants "sought follow-up emergency room and medical treatment for fictitious and fabricated accident symptoms and injuries." (*Id*. at 11.) As part of the scheme, Mr. Mize and Co-Defendants

Defendant's Sentencing Memorandum—Page 2

ETTER, M<sup>c</sup>MAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

would make materially false representations "about the manner in which the accident occurred and the cause, nature and extent of their injuries." (*Id*. at 10.)

Prior to entry of the Rule 11(c)(1)(C) Plea Agreement, Defense Counsel and the United States Attorneys spent multiple months negotiating the terms of a resolution. As such, the Plea Agreement provides:

> Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree the appropriate disposition of the case is a total sentence of incarceration of 144 months, the Defendant may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of greater than 144 months. . . . The United States and Defendant agree to recommend the following specific implementation of the 144 months of total incarceration: 138 months' incarceration as to Count 73 in Case No. 2:18-CR-00232-TOR to run concurrent with 36 months' incarceration as to Count 1 in Case No. 2:19-CR-00021-TOR; and 6 months' incarceration as to the single Count in Case No. 2:20-CR-00145-TOR to run consecutive to all other incarceration imposed.

(ECF No. 1046 at 42.)

By way of background, Mr. Mize was born in 1961 in El Paso, Texas. (ECF No. 1055 at 70.) Mr. Mize's father did not play a role in his childhood, and they did not meet until Mr. Mize was 17 years old. (*Id*.) At an early age, Mr. Mize learned from his mother "that a man's value was based on his wealth." (*Id*. at 71.) Mr. Mize's mother "spent her time with a number of male suiters," living "off her looks," and "often travelled." (*Id*. at 70.) Nevertheless, Mr. Mize

Defendant's Sentencing Memorandum—Page 3

ETTER, MᶜMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

did have a stepfather for approximately four years, who imposed "whippings so bad that the defendant could not go to school." (*Id*.) Furthermore, Mr. Mize's siblings were much older and "[t]heir relationship was more like that of an uncle or aunt." (*Id*.) At a young age, Mr. Mize "determined that school was somewhat of a waste of time and his time was better spent working." (*Id*. at 73.)

Mr. Mize was a self-made man and has supported himself since a teenager. (*See* ECF No. 1055 at 71.) He "became an emancipated teenager at the age of 16" and "purchased his first home at the age of 17." (*Id*.) Growing up, Mr. Mize "often had multiple jobs in order to support himself" and began working at 12 years old. (*Id*.) As indicated in the PSR, Mr. Mize "noted that he liked money, perhaps too much." (*Id*. at 71.) Mr. Mize worked his way up from a "barback," to a bartender, and eventually became regional manager of TGI Fridays in his 20s. (*Id*. at 73.) He married at a young age, had two children, and "really prided himself on caring for them." (*Id*. at 71.) Following a divorce from his first wife, "he sought and obtained full custody of the children." (*Id*.)

By the time Mr. Mize was 27 years old, "he used the knowledge he had learned in the restaurant business to open his first business, and went on to own a variety of businesses to include restaurants, bars and a limousine service." (ECF No. 1055 at 73.) As time passed, Mr. Mize "began investing in real estate

Defendant's Sentencing Memorandum—Page 4

ETTER, M<sup>C</sup>MAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

properties and would earn approximately $300,000 per year in investments." (*Id*.) When the real estate market crashed when Mr. Mize was in his fifties in the late 2000s, "he started committing fraudulent acts, in order to maintain the lifestyle that he was accustomed to." (*Id*.) However, Mr. Mize also had multiple legitimate ventures, mostly stemming from real estate investments.

Mr. Mize admittedly battled substance abuse issues during the timeframe that he committed the offense. (*See* ECF No. 1055 at 72-73.) Mr. Mize described himself as a "functional alcoholic," indicating that "he drank approximately 8-10 alcoholic beverages a day." (*Id*. at 72.) Furthermore, "he was essentially addicted to opiate-based medication, given how long he had been taking it (over 20 years), and that he would take Ambien and other substances to help him sleep." (*Id*. at 72-73.) He would "obtain double prescriptions for opiate-based medications and engage in 'doctor shopping.'" (*Id*. at 73.) While incarcerated, Mr. Mize "would like treatment for his opiate-based addiction." (*Id*.)

Mr. Mize, who is currently 63, has various health issues. (*See* ECF No. 1055 at 72.) Over the years, Mr. Mize's health has significantly declined. (*See id*.) Mr. Mize has the following medical conditions: "diabetes, high cholesterol, high blood pressure, arthritis, neuropathy, a metal plate in his neck that limits his

Defendant's Sentencing Memorandum—Page 5

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

mobility, and a torn membrane in his ear," as well as "past diagnosis for basal cell carcinoma." (*Id*. at 72.)

Not only does Mr. Mize acknowledge that his criminal conduct was motivated by greed, but he expresses sincere remorse for what he has done. As indicated in the PSR:

> His biggest regret over the offense is the way in which he has harmed so many of his family and friends, and that he talked many of them into it. He said he never considered the full legal ramifications of what they were doing, and that by giving these people a means to obtain a large amount of money to purchase homes or other desired items, he was the hero. He said he was carried away by his greed and become arrogant as time passed and they were not caught.

(ECF No. 1055 at 71.) Furthermore, Mr. Mize was unable to attend his mother's funeral "because he was on warrant status by the time of her passing" in March 2020. (*Id*.) According to the PSR, Mr. Mize reported that "to some extent, he feels a sense of relief at having been caught." (*Id*. at 72.)

## **POINTS & AUTHORITIES**

Title 18, Section 3553(a) directs that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." In this vein, the Court shall consider the "nature and circumstances of the offense <u>and the history and characteristics of</u>

Defendant's Sentencing Memorandum—Page 6

ETTER, M<sup>c</sup>MAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

the defendant." 18 U.S.C. § 3553(a)(1). The Court shall also consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). The Court is also to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(7).

Pursuant to the "remedial regime" established in *United States v. Booker*, 543 U.S. 220 (2005), the "Guidelines are no longer mandatory but are only advisory." *United States v. Carty*, 520 F.3d 984, 990 (9th Cir. 2008). Nevertheless, the Guideline Range is still "'the starting point and the initial benchmark.'" *Carty*, 520 F.3d at 991 (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)); *accord United States v. Cuevas-Lopez*, 934 F.3d 1056, 1061 (9th Cir. 2019). However, the Court "may not presume that the Guidelines range is reasonable," and the factors contained in 18 U.S.C. § 3553 are the overarching guide in the Court's determination. *Carty*, 520 F.3d at 991. The

Defendant's Sentencing Memorandum—Page 7

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

Court "must make an individualized determination based on the facts." *Carty*, 520 F.3d at 991.

Pursuant to Rule 11(c)(1)(C), a plea agreement may "agree that a specific sentence . . . is the appropriate disposition of the case . . . [and] such recommendation or request binds the court once the court accepts the plea agreement." Although Rule 11(c)(1)(C) allows the parties to agree that a specific sentence is appropriate, "that agreement does not discharge the district court's independent obligation to exercise its discretion." *Freeman v. United States*, 564 U.S. 522, 529 (2011) (Plurality Opinion). That is, "[a]ny bargaining between the parties is contingent until the court accepts the agreement." *Freeman*, 564 U.S. at 529-30. Only if the Court accepts the Plea Agreement is the recommended sentence binding. *See United States v. Davis*, 825 F.3d 1014, 1017 (9th Cir. 2016) ("If the district court accepted the agreement, then under Rule 11(c)(1)(C) the recommended sentence would be binding on the court.").

Here, a sentence of 144 months is sufficient, but not greater than necessary, to accomplish the purposes of sentencing. As noted in the PSR, Mr. Mize had absent parents, received "whippings" from his stepfather at a young age, and "learned from [his mother] that <u>a man's value was based on his wealth</u>." (ECF No. 1055 at 70-71.) Mr. Mize began working at a young age, became self-

Defendant's Sentencing
Memorandum—Page 8

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

made, and admits "that he liked money, perhaps too much." (*Id*. at 71.) He not only is in his mid-sixties, but has multiple health conditions, including diabetes, high blood pressure, and arthritis. (*See id*. at 72.) Based upon his age and health conditions, 144 months' imprisonment is not the same for Mr. Mize as a criminal defendant in his thirties or forties. *See* USSG § 5H1.1 ("Age . . . may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."); *accord* USSG § 5H1.4 ("Physical condition . . . may be relevant in determining whether a departure is warranted").

Overall, Mr. Mize's criminal conduct was the result of maintaining a certain lifestyle that he had grown accustomed. (*See* ECF No. 1055 at 73.) At the time, he was also fighting addictions. (*Id*. at 72-73.) As documented in the PSR, Mr. Mize's "<u>biggest regret over the offense is the way in which he has harmed so many of his family and friends</u>." (*Id*. at 71.) He acknowledges that his conduct was driven by greed, and that "he never considered the full legal ramifications of what they were doing." (*Id*.) Consideration of Mr. Mize's background, individual characteristics, and what led to the offense warrants a sentence consistent with the highly negotiated Rule 11(c)(1)(C) Plea Agreement.

Defendant's Sentencing Memorandum—Page 9

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

Furthermore, sentencing parity requires a downward variance to the 144 months contained in the parties' Rule 11(c)(1)(C) Plea Agreement. As indicated in the PSR, Mr. Mize's two most culpable Co-Defendants received sentences of 70 months and 60 months, respectively. (*See* ECF No. 1055 at 8-9.) A majority of the remaining Co-Defendants received sentences of 12 months or less, including home detention. (*See id*. at 8-12.) Similarly, the PSR notes that if Mr. Mize's Offense Level is 35, when compared to similarly situated defendants "the average length of imprisonment imposed was 97 month(s) and the median length of imprisonment imposed was 96 month(s)." (*Id*. at 86.) Sentencing parity supports the heavily negotiated Rule 11(c)(1)(C) Plea Agreement.

## CONCLUSION

For the foregoing reasons, Mr. Mize respectfully requests the Court sentence him to 144 months in prison. Mr. Mize further requests that he be placed at FCI Lompoc.

RESPECTFULLY SUBMITTED this 23rd day of October, 2024.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.

By: /s/ Andrew M. Wagley
    Andrew M. Wagley, WSBA #50007
    *Attorney for Defendant William O. Mize*

Defendant's Sentencing Memorandum—Page 10

ETTER, MCMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of October, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all of the attorneys that have appeared in this case and have registered with the CM/ECF System.

EXECUTED this 23rd day of October, 2024 in Spokane, WA.

By: /s/ Andrew M. Wagley
     Andrew M. Wagley

Defendant's Sentencing Memorandum—Page 11

ETTER, MCMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100